HON. THOMAS S. ZILLY

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  JONATHAN WENDER,

10                                    Plaintiff,

        v.

11

12  SNOHOMISH COUNTY, a municipal
    corporation; SNOHOMISH COUNTY
    PROSECUTING ATTORNEY JANICE
13  ELLIS, in her official capacity, and as an
    individual; SNOHOMISH COUNTY
14  DEPUTY PROSECUTING ATTORNEY
    MARK ROE, as an individual; THE
15  CITY OF MOUNTLAKE TERRACE, a
    municipal corporation, and THE
16  MOUNTLAKE TERRACE POLICE
    DEPARTMENT; MOUNTLAKE
17  TERRACE POLICE CHIEF SCOTT
    SMITH, in his official capacity, and as an
18  individual; MOUNTLAKE TERRACE
    POLICE ASSISTANT CHIEF
19  CHARLES PETER CAW, an individual;
    FORMER MOUNTLAKE TERRACE
20  POLICE ASSISTANT CHIEF
    MICHAEL MITCHELL, an individual;
21  THE CITY OF LYNNWOOD, a
    municipal corporation; STEVEN RIDER,
22  in his individual capacity; JANE DOES 1-
    3, and JOHN DOES 1-3,
23                                    Defendants.

NO. CV 07-0197 Z

FIRST AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF

24

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 1

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

COMES NOW the Plaintiff, JONATHAN WENDER, by and through his attorneys, and states:

## I.     NATURE OF ACTION, JURISDICTION AND VENUE

1.1     This is a civil rights lawsuit seeking damages and injunctive relief for the termination of the employment of former Police Sergeant Jonathan Wender by the Mountlake Terrace Police Department.

1.2     Sgt. Wender's termination was effected through the use of a so-called "Brady" procedure created by the Snohomish County Prosecuting Attorney's Office for sanctioning police officers. Although police officers for Mountlake Terrace and other departments in Snohomish County have a right to due process before they can be disciplined or fired from their jobs, Defendant Snohomish County's so-called "Brady" procedure was used to justify Sgt. Wender's termination without any due process at all. This was done deliberately, in order to avoid due process protections, in Sgt. Wender's case and in cases involving other officers in Snohomish County.

1.3     In this so-called "Brady" procedure, Defendant Roe, a single Snohomish County Deputy Prosecuting Attorney, acting as the accuser, investigator, judge, and jury, created "evidence" and branded Sgt. Wender untrustworthy to testify in court, knowing that this determination would result in discipline or termination, and intending that it do so. As is Defendant Snohomish County's standard operating procedure, Sgt. Wender was not given fair notice of a charge, a fair opportunity to submit and respond to evidence, the right to an unbiased decision maker, or the right to appeal or review.

1.4     No standards governed the Prosecuting Attorney's decision, which directly violated one of the few legal principles Snohomish County pretends to follow in this process—

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 2

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

1    that so called "Brady" decisions cannot be based on subjective credibility judgments.

2    Defendant Roe's decision against Sgt. Wender was expressly based on his personal, subjective

3    belief about whether Sgt. Wender had been truthful, and in that belief Defendant Roe ignored

4    the weight of evidence and contradicted the results of a valid and reliable polygraph

5    examination that showed Sgt. Wender was being truthful.

6         1.5    Because the Snohomish County "Brady" procedure lacks due process protections

7    and standards, it can be and has been utilized to sanction officers for unfair and unlawful

8    reasons.  In Sgt. Wender's case, a substantial reason this sanction was imposed and resulted in

9    his termination was his advocacy of drug policy reform, speech that was disapproved of by the

10   Defendants but protected by the First Amendment.

11        1.6    Sgt. Wender therefore has brought this action under 42 U.S.C. Section 1983 for

12   violation of his rights under the First and Fourteenth Amendments to the Constitution of the

13   United States.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343, 28 U.S.C.

14   § 1331 and 42 U.S.C. § 1983.

15        1.7    Venue is properly located in the Western District of Washington, Seattle

16   Division, because the Plaintiff and Defendants reside and/or are located within this District and

17   the actions complained of occurred within this District, in Snohomish County.

18   **II.**    **PARTIES**

19        2.1    Plaintiff Jonathan Wender is a resident of the Western District of Washington.

20   Prior to his termination, he was a long-time employee of the City of Mountlake Terrace and

21   served as a sergeant in its Police Department.

22

23

24

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 3

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

2.2    Defendant Snohomish County is a municipal corporation formed under the laws of the State of Washington. The Office of the Snohomish County Prosecuting Attorney is a department of Snohomish County.

2.3    Defendant Janice Ellis resides in the Western District of Washington. At all times material to this Complaint, Defendant Ellis was the Prosecuting Attorney of Snohomish County.  She is sued here for injunctive relief in her official capacity, and for damages as an individual.

2.4    Defendants Mark Roe reside in the Western District of Washington. At all times material to this complaint, he was a Deputy Prosecuting Attorney in the Snohomish County Prosecuting Attorney's Office. He is sued here as an individual, for damages.

2.5    Defendant City of Mountlake Terrace is a municipal corporation incorporated under the laws of the State of Washington, located in the Western District of Washington. The Mountlake Terrace Police Department is a department of the City of Mountlake Terrace, and is a member agency of the South Snohomish County Narcotics Task Force.

2.6    Defendant Scott Smith resides in the Western District of Washington. At all times material to this complaint, he was the Chief of the Mountlake Terrace Police Department. He is sued here for injunctive relief in his official capacity, and for damages as an individual.

2.7    Defendant Charles Peter ("Pete") Caw resides in the Western District of Washington. At all times material to this complaint, he was Assistant Chief of the Mountlake Terrace Police Department. He is sued here as an individual, for damages.

2.8    Defendant Michael Mitchell resides in the Western District of Washington. At all times material to this complaint, he was Assistant Chief of the Mountlake Terrace Police Department. He is sued here as an individual, for damages.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 4

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

2.9     Defendant City of Lynnwood is a municipal entity incorporated under the laws of the State of Washington, located in the Western District of Washington. The Lynnwood Police Department is a department of the City of Lynnwood and a member agency of the South Snohomish County Narcotics Task Force.

2.10    Defendant Steven Rider resides in the Western District of Washington. At all times relevant to this complaint, he was a Commander in the Lynnwood Police Department and was the commanding supervisor of the South Snohomish County Narcotics Task Force.

2.11    Defendants Jane Does 1-3 and John Does 1-3, whose identities are not known with certainty to Plaintiff at the present time, were involved in or participated in the acts and omissions that led to Plaintiff's unlawful termination described below.

## III.     FACTUAL BACKGROUND

Snohomish County's So-Called "Brady" Procedure

3.1     In 2004, exercising policy-making authority delegated to him by Defendant Snohomish County Prosecuting Attorney Janice Ellis, Defendant Mark Roe created a procedure used to sanction police officers who work for police departments within the county's jurisdiction.

3.2     The procedure created by Defendant Snohomish County and Defendant Roe resulted in what were commonly referred to as "Brady" investigations, "Brady" determinations and "Brady" letters; but despite its name, the "Brady" procedure was not required by *Brady v. Maryland*, 373 U.S. 83 (1963) or any judicial decision interpreting that case, or any statute or court rule. The procedure was applied without regard to whether there was a pending criminal prosecution in which an officer's testimony might be offered and the sanction might be relevant, and without regard to the relevance, admissibility, or materiality of the subject matter.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 5

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

3.3     Through the "Brady" procedure, Defendant Roe, on behalf of Snohomish County and Defendant Ellis, investigates allegations of untruthfulness, interviews witnesses, creates new "evidence," and makes formal, unreviewable findings that officers have said or done something that bears adversely on their credibility and truthfulness.  That "Brady" determination is conveyed by a "Brady" letter to the officer's department, stating that the decision will be further conveyed to defense counsel in all cases in which the officer is a potential witness, regardless of its specific relevance, admissibility, or materiality.

3.4     Defendant Ellis and Defendant Roe know or should know that such "Brady" determinations and letters damage the reputation, promotional opportunities, and ability to retain employment in law enforcement of accused officers, and damage their ability to obtain future law enforcement employment.

3.5     Despite that, the "Brady" procedure and resulting "Brady" determinations lack: fair notice to the accused officer; the right or opportunity to confront witnesses or inspect adverse evidence or to present evidence on the officer's own behalf; an unbiased decision maker; governing standards; and any right to appellate review.  What few rules and procedures are supposed to govern the process – such as an alleged prohibition on "credibility determinations," a promise of protections against improper disclosure, and direction against the use of the "Brady" letters in internal personnel matters – are routinely ignored.

3.6     Because of this lack of procedural rules and governing standards, the "Brady" procedure predictably results in employment actions wrongfully taken against officers who were not guilty of any conduct warranting such a sanction.

3.7     Because of the lack of procedural rules and standards, the "Brady" procedure predictably results in unequal application and retaliation against officers for protected activity.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 6

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX:  (206) 343-3961

1    3.8    In this case, Defendant Roe intentionally used the "Brady" process to interfere in

2    the internal personnel matters of the Mountlake Terrace Police Department to have Sgt. Wender

3    terminated.

4    Sgt. Jonathan Wender's Employment by the Mountlake Terrace Police Department

5    3.9    Sgt. Wender was an employee of the Mountlake Police Department for nearly 15

6    years, from October 28, 1990 to October 19, 2005.

7    3.10    Sgt. Wender rose through the ranks and in April of 2001 was promoted to

8    Sergeant.  He maintained that rank until his termination.

9    3.11    Throughout his employment, Sgt. Wender was qualified to perform his job,

10    performed it well, and received positive performance reviews as well as frequent official and

11    public commendations.  He gained a reputation for honesty that was outstanding throughout

12    Mountlake Terrace and in the larger law enforcement community.  Prior to his termination on

13    October 19, 2005, Sgt. Wender had no significant prior disciplinary actions and no history of

14    performance problems.

15    3.12    Sgt. Wender had a property interest in his job and a legitimate expectation in his

16    continued employment by Mountlake Terrace and its Police Department.  Those arose from,

17    among other things, specific promises made by Mountlake Terrace and its Police Department,

18    and through its policies, procedures, practices and customs, including those establishing for-

19    cause termination and due process before discipline.

20    Sgt. Wender's Free Speech Activities, and Defendants' Disapproval of Them

21    3.13    Sgt. Wender holds a Ph.D. in criminology.  Moreover, Sgt. Wender was widely

22    regarded as the most "outspoken" employee in the Mountlake Terrace Police Department.  He

23    routinely, appropriately, and critically discussed and debated matters of public concern,

24

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 7

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX:  (206) 343-3961

1   including drug policy reform, police scheduling and officer fatigue, and other aspects of

2   operational policies.

3       3.14    In 2002, Sgt. Wender objected to the proposed distribution and collection at

4   Mountlake Terrace churches of an official police department survey, on the grounds that doing

5   so would yield biased results unreflective of the City's diverse population, and that involving

6   the Mountlake Terrace Police Department in a church event would constitute an improper

7   governmental support of religion.  Defendant Smith formally reprimanded Sgt. Wender for this

8   protected speech.  The discipline was subsequently rescinded following a grievance by

9   Sgt. Wender and the Mountlake Terrace Police Guild.

10      3.15    In 2005, Sgt. Wender made internal, and focused comments to the Mountlake

11  Terrace Police Department command staff and the leadership of the Mountlake Terrace Police

12  Guild disagreeing with their proposed change in patrol scheduling.  Sgt. Wender had specialized

13  knowledge on the issue, a subject involving matters of public safety and concern including

14  officer fatigue, safety, effectiveness, and continuity.  Sgt. Wender advocated that leadership

15  take a measured approach and consider all of the human, public, and operational impacts of

16  changing departmental policy before altering the patrol scheduling policy.   Defendant Smith

17  disagreed with Sgt. Wender's views and directed him to stop speaking against or in any way

18  interfering with the proposed schedule change.  Sgt. Wender complied with that order.

19      3.16    In 2005, during an Assistant Chief promotional examination, Sgt. Wender

20  offered constructive criticism of the Mountlake Terrace Police Department's operations and

21  leadership in response to questions pointedly asked about what he would do differently as a

22  member of the command staff.  Defendant Smith disagreed with the content of his speech and

23

24

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 8

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX:  (206) 343-3961

1    was angry that Sgt. Wender had criticized his leadership decisions.  Defendant Caw was

2    selected for promotion and was promoted to Assistant Chief.

3        3.17    As a result of his education, and his extensive experience in drug-related

4    prosecutions, Sgt. Wender also developed strong opinions on the prevailing drug policies in the

5    United States and the State of Washington, often referred to as the "War on Drugs."  He became

6    critical of the criminalization of addiction and ineffective use of public resources on law

7    enforcement and judicial prosecutions of low-level users, rather than large-scale producers and

8    manufacturers, traffickers, and operators of drug rings.

9        3.18    Throughout the time he served Mountlake Terrace and its Police Department,

10   Sgt. Wender frequently discussed problems and issues associated with the "War on Drugs"

11   internally with co-workers, colleagues, and supervisors.  Sgt. Wender also proposed timely and

12   critical reforms of operational practices at the Mountlake Terrace Police Department.  For

13   example, he recommended to Defendant Smith and other command staff that the Mountlake

14   Terrace Police Department reestablish its Proactive Unit, which would improve Mountlake

15   Terrace's effectiveness in affirmatively addressing the City's chronic problems with drug

16   trafficking and the many crimes against persons and property associated with it.

17       3.19    Throughout the time he worked for Mountlake Terrace and its Police

18   Department, Sgt. Wender spoke out and contributed to the public debate about the "War on

19   Drugs" in the media, in his academic work, and through his involvement in efforts to reform

20   drug policy.

21       3.20    From 2000 and continuing thereafter, Sgt. Wender was active in the King

22   County Bar Association's Drug Policy Project and served as a member of its Criminal

23   Sanctions Task Force.  The KCBA Drug Policy Project brought together a politically diverse,

24

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 9

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

1    blue ribbon group of legal, judicial, medical, and other professionals and leaders from

2    throughout the region to address difficult issues related to drug law policy and practices.

3         3.21    From 2002 and continuing thereafter, Sgt. Wender was involved in an

4    organization called Law Enforcement Against Prohibition (LEAP) and served on its speakers'

5    bureau.

6         3.22    Sgt. Wender informed Defendant Smith of his involvement in the KCBA Drug

7    Policy Project and in LEAP, and assured him that the activities would be done on his own time

8    and in his personal capacity.  Sgt. Wender also took care to ensure that all of his speech

9    activities conformed to Mountlake Terrace Police Department's policies and procedures.

10   Despite these assurances, Defendant Smith ordered Sgt. Wender to redact his affiliation with the

11   Mountlake Terrace Police Department from his LEAP speakers' bureau profile.

12        3.23    The content, form, and context of Sgt. Wender's speech and activities on drug

13   policy all demonstrate that he was addressing a matter of public interest and concern.

14        3.24    Sgt. Wender's protected speech activities were professional in nature, well

15   considered and well-timed, professionally appropriate, backed by facts and critical analysis, and

16   respectful of others' dissenting opinions.

17        3.25    Sgt. Wender's engagement in free speech activities and advocacy were not

18   disruptive and did not impair his harmonious relationships with his co-workers or his

19   supervisors and commanders.

20        3.26    Irrespective of his reform-oriented opinions, beliefs, and advocacy about the

21   "War on Drugs," during his employment with the Mountlake Terrace Police Department,

22   Sgt. Wender rigorously enforced the existing drug laws as they were, and ensured those he

23

24

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 10

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

1   supervised also enforced them. Sgt. Wender was responsible for more drug arrests than

2   comparable patrol sergeants at the Mountlake Terrace Police Department.

3        3.27   Management and supervisory personnel at Mountlake Terrace and its Police

4   Department, including Defendant Smith, Defendant Charles "Pete" Caw and Defendant

5   Michael Mitchell, knew of Sgt. Wender's views on the "War on Drugs" and drug policy reform

6   activities and disagreed with them. Throughout Sgt. Wender's employment, Defendant Smith

7   and Defendant Caw expressed their disagreement with Sgt. Wender's views and their

8   discomfort with Sgt. Wender's involvement in these reform activities and organizations.

9        3.28   In 2003, the Seattle Weekly published an article focusing on LEAP and law

10   enforcement officers who were critical of the ineffectiveness of present drug policy.

11   Sgt. Wender agreed to be interviewed for the story. The published story included a single, out

12   of context quote from Sgt. Wender.

13        3.29   Defendant Caw expressed to Sgt. Wender his displeasure with the Seattle

14   Weekly article.

15        3.30   Defendant Smith verbally admonished Sgt. Wender for the content of his Seattle

16   Weekly quote, told him he had offended many colleagues in and beyond the Mountlake Terrace

17   Police Department, who wanted him demoted or fired, and directed him to "take steps to clean

18   up this mess." Sgt. Wender complied, issued an internal memo clarifying his statement, and

19   wrote a letter to the editor of the Seattle Weekly protesting the publication of the quote out of

20   context and the mentioning of his departmental affiliation.

21        3.31   In 2003, Sgt. Wender disclosed to Defendant Smith that he had been listed by

22   LEAP as a speaker at Hempfest without Sgt. Wender's permission, and that he had directed

23   LEAP to remove his name from the roster. In response, Defendant Smith expressed his

24

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 11

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

1  disapproval of Sgt. Wender's views, responding that he "certainly hoped" Sgt. Wender would

2  not be speaking at Hempfest, and saying that he would be extremely concerned and upset if

3  Sgt. Wender actually did appear there.

4      3.32    Through its management and supervisory personnel, Mountlake Terrace and its

5  Police Department researched, monitored, and tracked Sgt. Wender's speech activities

6  regarding the drug war and kept a file on him and these activities.

7      3.33    On August 17, 2003, Defendant Caw, then a Sergeant, found the Hempfest roster

8  and Sgt. Wender's LEAP speaker profile on the Internet and forwarded the information to

9  Defendant Smith with an angry note asking if Sgt. Wender was breaking Mountlake Terrace

10  Police Department policy.

11      3.34    In May of 2005, independent of any official investigation, Mountlake Terrace

12  and its Police Department printed out the Seattle Weekly article in which Sgt. Wender was

13  quoted.

14      3.35    It was widely known in law enforcement circles within South Snohomish County

15  and outside of Mountlake Terrace and its Police Department that Sgt. Wender did not agree

16  with current drug policy in the State of Washington and the United States.  He gained a

17  reputation in those circles as being a critic of the "War on Drugs."

18      3.36    For many months in 2004 and 2005, and unbeknownst to Sgt. Wender at the

19  time, Sgt. Wender's LEAP speakers' bureau profile was posted at the Lynnwood Police

20  Department, the agency with primary command oversight of the South Snohomish County

21  Narcotics Task Force.

22      3.37    Defendants Roe, Smith, Caw, Mitchell, and Rider knew of Sgt. Wender's drug

23  policy reform views and activities and strongly disagreed with them.

24

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 12

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

<u>Defendants' Retaliation Against Sgt. Wender for Free Speech Activities</u>

3.38    In 2005, Defendants punished Sgt. Wender for his First Amendment activities by initiating a criminal investigation of him, placing him on administrative leave, undertaking an internal investigation of him, imposing the "Brady" procedure and issuing a so-called "Brady" letter sanctioning him, and ultimately terminating him, because of his exercise of protected speech and involvement in drug policy reform activities with which they disagreed.

3.39    Explicit reference to Sgt. Wender's protected speech, viewpoint and reform activities on the "War on Drugs" was included in the Defendants' communications regarding the criminal investigation of Sgt. Wender, the internal investigation conducted by Defendant Mitchell, and the "Brady" investigation and procedure against him.  Sgt. Wender's free speech activities were a substantial or motivating factor in the decision to retaliate against, investigate, discipline, sanction, and terminate him.

3.40    Defendants' alleged non-retaliatory reasons for investigating, disciplining, and terminating him, conducting the "Brady" procedure, and issuing him the "Brady" letter, are pretexts for retaliation, inconsistent with official policy, practice and custom, and constitute different treatment and disproportionately harsh discipline as compared to others in similar situations who had not engaged in protected activities.

3.41    Defendant Mountlake Terrace and its Police Department allege that they investigated and terminated Sgt. Wender because he violated Mountlake Terrace Police Department policies and operational values with regard to how he handled a call on June 9, 2005.  They also claim they investigated and terminated him because of what they allege were "untruthful" statements made in the subsequent investigation of that incident and in discussions

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 13

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

1    he had with his supervisors regarding the scope of restrictions placed on him during the

2    investigation and his administrative leave.  These allegations are pretexts.

3    <u>The Events of June 9-10, 2005</u>

4        3.42    On the evening of June 9, 2005, while Sgt. Wender was the Mountlake Terrace

5    Police Department night shift sergeant on duty, working with minimum staffing, he handled a

6    call from a complainant who alleged that she had seen a single marijuana plant by the side of

7    her estranged husband's house when she had gone to pick up her daughter from a parental visit.

8    She said she wanted to have an official record of her call, because the presence of drugs at his

9    residence was forbidden by a pending parenting agreement and because this could be an issue in

10    the finalization of their divorce settlement.  The complainant specifically stated that she did not

11    want to see her estranged husband get in trouble.

12        3.43    In response to this call, Sgt. Wender asked a series of questions to determine the

13    nature of any potential criminal violations, or issues of public safety and welfare.  In the

14    discussion, the complainant stated that she did not believe that her husband had more than one

15    marijuana plant, or that he was dealing marijuana, or that he was involved with other drugs.

16    Sgt. Wender checked her estranged husband's name and date of birth through law enforcement

17    databases to address concerns of public safety and welfare and to determine if the estranged

18    husband had a record of criminal conduct.  He found none.  Sgt. Wender proposed to the

19    complainant that he handle the situation by calling her husband by telephone to tell him to

20    comply with the law.  She agreed with that plan.

21        3.44    Sgt. Wender called the husband on the telephone and admonished him to comply

22    with the law to avoid risking the loss of parental rights with his daughter.  He then cleared the

23    complaint as "settled by contact."

24

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 14

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

3.45    Sgt. Wender's handling of the June 9, 2005 call was consistent with the policies, procedures, practices or customs of the Mountlake Terrace Police Department and was a reasonable and routine exercise of police and supervisory discretion.

3.46    On June 10, 2005, the complainant unlawfully entered her estranged husband's home, where she found and photographed a small marijuana grow operation. She had not been aware of the grow operation at the time she talked with Sgt. Wender, and had specifically told Sgt. Wender that there was none. She then brought the photographs to the Mountlake Terrace Police Department, which referred the case to the South Snohomish County Narcotics Task Force.

3.47    Defendant Caw knew of these facts at the time and took no steps to contact Sgt. Wender to ask him about these events or to discipline him in any way.

3.48    On June 10, 2005, a detective from the South Snohomish County Narcotics Task Force called Sgt. Wender and informed him that evidence of a small marijuana grow operation had been discovered. Sgt. Wender expressed his surprise and confirmed that he had no knowledge of the grow operation the day before and that he had not directed the complainant to break into her estranged husband's house.

3.49    On the night of June 10, 2005, Mountlake Terrace and its Police Department, including Sgt. Wender, participated with the South Snohomish County Narcotics Task Force in the execution of the search warrant and the arrest of the estranged husband for growing marijuana inside his home.

<u>The Conspiracy to Retaliate Against Sgt. Wender and Have Him Terminated</u>

3.50    On June 14, 2005, Defendant Rider, a Commander in the Lynnwood Police Department who led the South Snohomish County Narcotics Task Force and who knew of Sgt.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 15

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX:  (206) 343-3961

1  Wender's free speech and drug reform activities, wrote a memorandum and initiated a criminal

2  investigation of Sgt. Wender for his handling of the June 9, 2005 call.  The memorandum

3  initiating the investigation made specific and negative reference to Sgt. Wender's political

4  beliefs about drug laws.

5      3.51    On or before June 14, 2005, and before writing the memorandum, Defendant

6  Rider communicated with Deputy Prosecuting Attorney John Adcock of the Snohomish County

7  Prosecuting Attorney's Office, who encouraged him to investigate Sgt. Wender and initiate

8  criminal charges against him.  Defendant Rider and Mr. Adcock initiated this process even

9  though there was no reasonable suspicion or probable cause to believe Sgt. Wender had

10 committed any crime.

11     3.52    The City of Lynnwood, through its Deputy Chief of Police and ratified by its

12 Chief of Police, encouraged and instigated criminal and/or administrative investigations on

13 Sgt. Wender, based on Defendant Rider's memorandum directly targeted at Sgt. Wender's free

14 speech activities and viewpoint.

15     3.53    On June 15, 2005, Defendant Rider's memorandum and the views of the

16 Snohomish County Prosecutor's Office were communicated to Mountlake Terrace.  In response,

17 Mountlake Terrace and Defendants Smith, Caw, and Mitchell initiated a criminal investigation

18 of Sgt. Wender, appointed an investigator chosen by Defendant Roe, and placed Sgt. Wender on

19 administrative leave, stripping him of his gun, badge and credentials, and restricting him to his

20 residence from 8:00 A.M. to 4:00 P.M., Monday through Friday.  Each of these disciplinary

21 measures was highly unusual and deviated grossly from prior comparable investigations.

22

23

24

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 16

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

3.54    The Defendants took these actions although there was no reasonable suspicion or probable cause to believe that Sgt. Wender had committed any crime in his handling of the June 9, 2005 call.

3.55    A substantial or motivating factor in initiating the criminal investigation of Sgt. Wender was disapproval of his free speech and drug reform activities.

3.56    The criminal investigation uncovered no basis for charging Sgt. Wender for a crime with respect to his handling of the June 9, 2005 call.

3.57    On July 6, 2005, the Snohomish County Prosecuting Attorney's Office formally declined to file any criminal charges against Sgt. Wender for his handling of the June 9, 2005 call.

3.58    Instead of returning Sgt. Wender to work, Mountlake Terrace and its Police Department, at the direction of Defendant Smith, kept Sgt. Wender on administrative leave, failed to restore his duty weapon, badge and credentials, and undertook an internal investigation of his handling of the underlying call of June 9, 2005.  This treatment was highly unusual and deviated grossly from prior comparable investigations.

3.59    After the decline notice, in conversations with Defendant Mitchell, Defendant Roe interfered in the internal personnel matters of the Mountlake Terrace Police Department and directed the internal investigation to include an "untruthfulness" allegation based on alleged differences in recollection between the complainant and Sgt. Wender regarding their conversation on June 9, 2005.  Defendant Roe also raised the prospect of issuing a so-called "Brady" letter.

3.60    In July 2005, Defendant Mitchell conducted an internal investigation on Sgt. Wender.  As part of that investigation, defendants printed articles from the Internet that

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

1    specifically referenced Sgt. Wender's First-Amendment protected views and speech, including

2    the Seattle Weekly article.

3        3.61    On July 13, 2005, Defendant Mitchell interviewed Sgt. Wender as a part of the

4    internal investigation.  During the interview, Defendant Mitchell challenged Sgt. Wender's

5    ability to ask all the questions he says he did during the call, and specifically referenced

6    Defendant Roe's and Defendant Snohomish County's so-called "Brady" procedure, saying,

7    "and this is where the Brady issue is gonna come up."

8        3.62    During the internal investigation, Defendants Smith, Caw, and Mitchell knew of

9    Sgt. Wender's repeated offers to take a polygraph examination to resolve any doubts, but

10   refused to request or allow consideration of a polygraph in violation of Department Policy.

11       3.63    At some point during the internal investigation process, Defendant Mitchell

12   showed the internal investigation file to Defendant Smith.  Defendant Smith pulled several

13   pages of First Amendment related pages from the file, commenting "We can't have this in here;

14   this is lawsuit material for Jonathan."

15       3.64    On August 3, 2005, Defendants Roe, Smith, Caw, and Mitchell met together

16   with attorney Michael Bolasina of Stafford Frey Cooper at the Mountlake Terrace Police

17   Department and decided to delay the Mountlake Terrace Police Department's finalization of

18   findings and discipline arising from the internal investigation to allow a "Brady" procedure and

19   determination to be made by Defendant Snohomish County and Defendant Roe.  They did that

20   knowing that there was insufficient evidence to terminate or take serious disciplinary action

21   against Sgt. Wender with respect to the June 9, 2005 incident under Mountlake Terrace's rules

22   and procedures, but that the so-called "Brady" procedure, "Brady" determination, and "Brady"

23

24

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 18

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

1   letter would enable sanctions to be imposed against Sgt. Wender without regard to any

2   established rules of due process or standards.

3      3.65   A substantial or motivating factor for the initiation of the internal investigation

4   of Sgt. Wender, the diversion of the investigation into the Snohomish County Prosecutor's

5   Office's so-called "Brady" procedure, and the initiation of the "Brady" procedure itself, was

6   retaliation for Sgt. Wender's free speech and drug reform activities.

7      3.66   Immediately following the August 3, 2005 meeting between Defendants Smith,

8   Caw, Mitchell, and Roe, Defendants Smith, Mitchell, and Caw met Sgt. Wender outside.

9   Defendant Caw handed a piece of paper to Sgt. Wender with Defendant Roe's phone number on

10   it and told him to give Defendant Roe a call.  Defendant Smith commented Defendant Roe was

11   doing Sgt. Wender a favor by meeting with him because "Brady" affords no due process.

12      3.67   The Mountlake Terrace Police Department's draft internal investigation report,

13   written by Defendant Mitchell, explicitly referred to Sgt. Wender's alleged political viewpoint

14   on drug laws.  The draft internal investigation findings include a "violation" of Policy 16.1, the

15   "Code of Conduct," specifically linking Sgt. Wender's "personal feeling [sic] on the war on

16   drugs and marijuana" with the investigating Defendant Mitchell's "belief that Wender let his

17   personal beliefs get in the way" in the handling of the call.  Defendant Mitchell's report is

18   slanted, inaccurate, and on several critical facts, incorrect.

19      3.68   Pursuant to the agreement made August 3, 2005, Defendants Mountlake Terrace,

20   Smith, Caw, and Mitchell turned over the preliminary internal investigation report and materials

21   to Defendant Roe.  They did this in violation of the Department's policy, practice and custom of

22   preserving the privacy and confidentiality of internal investigations until they are completed and

23   unless discipline is sustained.

24

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 19

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

3.69    Also pursuant to the August 3, 2005 agreement, the Mountlake Terrace Police Department, and Defendants Smith, Caw, and Mitchell delayed finalization of their own internal investigation for nearly two months until Defendant Roe completed his investigation, in violation of the Department's policy, practice and custom of finalizing internal investigations promptly and during a set time period.

3.70    Consistent with Defendant Snohomish County's "Brady" procedure, Sgt. Wender was not given notice of the procedures or standards that would govern Defendant Roe's investigation, was not given notice of the factual nature of the allegations against him, and was not given access to the Mountlake Terrace Police Department's investigative materials that Defendant Roe used to interrogate him.

3.71    Consistent with Defendant Snohomish County's "Brady" procedure, the investigation by Defendant Roe was controlled by no set standards, rules, or protections against bias.  On August 31, 2005, Defendant Roe interviewed Sgt. Wender.  Defendant Roe explicitly addressed Sgt. Wender's protected speech activities, accused him of lying about his conversation with the complainant, and told Sgt. Wender he should be fired.  Defendant Roe also raised for the first time an alleged "untruthfulness" issue arising from communications between Sgt. Wender and Defendant Mitchell about the conditions of Sgt. Wender's administrative leave.  Defendant Roe questioned Sgt. Wender about this second issue despite the fact that it had neither been raised with Sgt. Wender during his internal investigation interview, nor included in the preliminary findings provided to Defendant Roe by Defendant Mountlake Terrace Police Department.

3.72    During his interview with Defendant Roe, Sgt. Wender offered to take a polygraph test regarding both "untruthfulness" issues identified by Defendant Roe.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 20

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

1   Sgt. Wender subsequently took and passed a polygraph regarding the June 9 call.  He provided

2   the results to Defendant Roe.  He again offered to take a second polygraph about the

3   communications with Defendant Mitchell regarding the conditions of his administrative leave.

4   Defendant Roe summarily dismissed the exonerating polygraph results, and refused

5   Sgt. Wender's offer to take to take a polygraph about his communications with Defendant

6   Mitchell.

7       3.73    In his investigation, Defendant Roe refused to interview a witness identified by

8   Sgt. Wender or to review phone records supportive of Sgt. Wender's account of the events in

9   question.

10      3.74    On September 26, 2005, Defendant Roe issued a so-called "Brady" letter,

11  addressed "To whom it may concern."  In it, Defendant Roe made his own credibility findings

12  regarding Sgt. Wender and other witnesses, declaring that Sgt. Wender had been "untruthful" in

13  reporting the questions he asked of the complainant during the criminal investigation and in

14  internal personnel communications about attending appointments while on administrative leave.

15  In the letter, Defendant Roe summarily dismissed the polygraph evidence, although polygraph

16  examinations are routinely relied upon by the Snohomish County Prosecuting Attorney's Office

17  and elsewhere, in charging and administrative decisions.  Defendant Roe's letter was sent to the

18  Mountlake Terrace Police Department and indicated that it, and Defendant Roe's determination

19  of untruthfulness, would be shared with defense counsel in proceedings in which Sgt. Wender

20  was a witness.

21      3.75    The "Brady" letter, and Defendant Roe's findings and conclusions against

22  Sgt. Wender for alleged untruthfulness, are based on false, exaggerated or incorrect facts, an

23  unconstitutionally vague standard, and Defendant Roe's personal biases.

24

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 21

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX:  (206) 343-3961

1    3.76    The "Brady" letter, and Defendant Roe's findings and conclusions against

2    Sgt. Wender for alleged "untruthfulness," constitute different and adverse treatment compared

3    to the outcomes and findings of Defendant Roe's investigations of law enforcement officers

4    who had been proven to be untruthful but who had not engaged in protected speech activities.

5    3.77    There is no appeals process for removing a "Brady" finding or "Brady" letter

6    created by Defendant Roe and Defendant Snohomish County.

7    3.78    Defendant Snohomish County and Defendant Roe maintain no record of the

8    interviews or investigation of Sgt. Wender, and have no record or evidence to substantiate

9    Defendant Roe's personal findings and conclusions regarding Sgt. Wender or other officers

10    subjected to the "Brady" procedure.

11    3.79    Defendant Snohomish County and Defendant Roe knew that making a "Brady"

12    finding and issuing a "Brady" letter would damage Sgt. Wender's reputation and would lead to

13    termination of his employment and/or preclusion from comparable employment with other law

14    enforcement agencies, and intended for it to do so.  Imposition of the "Brady" procedure,

15    including the "Brady" determination and "Brady" letter, did in fact lead to Sgt. Wender's

16    termination and has precluded him from obtaining comparable law enforcement employment.

17    3.80    Defendant Roe communicated his determination that Sgt. Wender lacked

18    credibility and trustworthiness to Mountlake Terrace and its Police Department and Defendant

19    Smith.  In that communication, Defendant Roe expressly stated that Sgt. Wender "shouldn't be

20    a cop."

21    3.81    Defendant Roe's actions and determinations regarding Sgt. Wender were known

22    to and ratified by Defendant Janice Ellis.

23

24

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 22

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX:  (206) 343-3961

1    3.82    Sgt. Wender's First Amendment-protected views on the drug war were a

2    substantial or motivating factor for all of the above-described adverse actions.

3    3.83    The above-described actions of the Defendants caused Sgt. Wender to be

4    deprived of his liberty interest in his reputation and opportunity for future law enforcement

5    employment without due process.  It also caused him to be deprived of his property interest in

6    his public employment without due process.

7    3.84    Defendant Roe's adverse determination against Sgt. Wender was, and was

8    intended to be, a substantial or motivating factor in terminating his employment with the

9    Mountlake Terrace Police Department, and in precluding him from employment in comparable

10   law enforcement agencies.

11   3.85    On October 2, 2005, Mountlake Terrace and its Police Department, by and

12   through Defendant Smith, issued a pre-disciplinary hearing memo sustaining seven violations of

13   department policy and three violations of the Department's "organizational values" regarding

14   Sgt. Wender's handling of the underlying complaint and subsequent "untruthfulness"

15   allegations, based primarily on the investigations and findings of Defendant Mitchell.  The

16   memo makes explicit reference to Defendant Roe's adverse findings against Sgt. Wender, and

17   to the issuing of a "Brady" letter against Sgt. Wender by Snohomish County, its Prosecutor's

18   Office, and Defendant Roe.  The memo stated Defendant Smith's decision to terminate Sgt.

19   Wender.

20   3.86    On October 14, 2005, a pre-disciplinary (*Loudermill*) hearing was held in

21   Defendant Smith's office.  At that time, Sgt. Wender read a written statement denying all

22   charges of wrongdoing, reporting he was being retaliated against because of his free speech

23   activities, and offering polygraph evidence.

24

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 23

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

3.87    On October 19, 2005, Mountlake Terrace and its Police Department, by and through Defendant Smith, issued a letter terminating Sgt. Wender.  The termination letter restated the rationale of the October 2, 2005 pre-hearing memo and articulated that the decision to terminate Sgt. Wender was based on "the facts as presented in both investigations, the issuance of a 'Brady letter,' as well as your comments during the pre-disciplinary hearing."

3.88    On November 1, 2005, Interim Mountlake Terrace City Manager Jerald Osterman ratified Defendant Smith's termination of Sgt. Wender after reviewing the internal investigation file, the "Brady" letter, the pre-hearing memo, and the letter of termination.

3.89    Retaliation for Sgt. Wender's free speech views, statements and activities was a substantial and/or motivating factor behind Defendant Mountlake Terrace Police Department's, and Defendant Smith's, decision to terminate Sgt. Wender's employment.

3.90    In both the pre-disciplinary hearing memo and the termination letter, Defendant Smith expressly adopted and sustained Defendant Mitchell's finding that Sgt. Wender violated the "Code of Conduct," Policy 16.1, and that Sgt. Wender was being terminated because of his "personal feeling [sic] on the war on drugs and marijuana" and Mountlake Terrace and its Police Department's "belief that Wender let his personal beliefs get in the way."

3.91    The termination of Sgt. Wender was unfounded and without just cause.  The alleged non-discriminatory reasons for termination were pretexts for retaliation and/or were based on incorrect, exaggerated and/or distorted facts.

3.92    Defendant Mountlake Terrace and its Police Department, and Defendant Smith, failed to provide adequate notice of the subjects of the internal investigation that formed the basis for Sgt. Wender's termination.  This included, without limitation, failing to notify Sgt. Wender of the alleged "false statement" regarding communications about his leave

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

1  restrictions. Defendants Mountlake Terrace and its Police Department, and Defendant Smith,

2  also failed to conduct an internal investigation of the second "false statement" prior to imposing

3  disciplinary action. These failures violated the Mountlake Terrace Police Department's own

4  policies, procedures, practices and/or customs and deprived Sgt. Wender of procedural due

5  process.

6      3.93    Defendant Mountlake Terrace and its Police Department, and Defendant Smith,

7  expressly relied on, incorporated, and based Sgt. Wender's termination in part on Defendant

8  Roe's "untruthfulness" findings arising from his investigation as detailed in his September 26,

9  2005 letter, and thereby deprived Sgt. Wender of due process.

10     3.94    Defendant Mountlake Terrace and its Police Department, and Defendant Smith,

11  based Sgt. Wender's termination in part on three contraventions of department "organizational

12  values." The "organizational values" are vague and have never been included in the

13  Department policy manual or any other policy or procedure directive. Discipline premised on

14  these vague "organizational values" thereby deprived Sgt. Wender of due process.

15     3.95    Defendant Mountlake Terrace and its Police Department's termination of

16  Sgt. Wender constitutes different treatment and disproportionately harsh discipline compared to

17  other officers accused of comparable or more serious violations who had not engaged in

18  protected free speech activity and were not terminated.

19     3.96    Defendant Mountlake Terrace and its Police Department's termination of

20  Sgt. Wender for reasons including "untruthfulness" as well as Defendant Snohomish County's

21  and Defendant Roe's imposition of the "Brady" procedures and "Brady" letter, precludes

22  Sgt. Wender from obtaining comparable employment in other law enforcement agencies.

23

24

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

1  Municipal Liability, Color of Law and Damages

2      3.97    All the above described actions and omissions of the Defendants were done

3  under color of law of the State of Washington and within the scope of their official

4  employment.

5      3.98    All actions and omissions of Defendants Smith, Caw, and Mitchell and the other

6  managerial and supervisory personnel at Mountlake Terrace and its Police Department were

7  taken pursuant to the policies, procedures, practices and/or customs of the Mountlake Terrace

8  Police Department and the violation of Sgt. Wender's rights was the proximate and foreseeable

9  result of those policies, procedures, practices and/or customs.

10     3.99    All actions and omissions of Defendants Roe and Ellis were taken pursuant to

11 the policies, procedures, practices and/or customs of Defendant Snohomish County and its

12 Prosecuting Attorney's Office and the violation of Sgt. Wender's rights was the proximate and

13 foreseeable result of those policies, procedures, practices and/or customs.

14     3.100   As a direct and proximate result of the acts and omissions of Defendants,

15 Sgt. Wender has suffered and will suffer special, general and consequential damages in an

16 amount to be proved at trial, including, without limitation: loss of employment and career; past

17 and future wages and benefits of employment; loss of retirement benefits and account; loss of

18 income earning potential; stigma, humiliation and loss of reputation; emotional distress and

19 suffering; loss of liberty and of the enjoyment of life; adverse tax consequences; and attorney's

20 fees and costs.

21

22

23

24

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 26

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

## IV.    CLAIM ALLEGATIONS

Claim 1:        Unlawful Retaliation for Exercise of Free Speech – Defendants City of
                Mountlake Terrace, Smith, Caw, Mitchell, Rider, and Roe

4.1    By the above-described acts, Defendants Mountlake Terrace, Smith, Caw,

Mitchell, Rider, and Roe caused Plaintiff to be penalized for exercising his clearly established

right to speak out and engage in reform activities on matters of public concern and importance,

and to be denied his right to be free from retaliation in the form of adverse employment and

governmental actions motivated by his exercise of such rights, as guaranteed under 42 U.S.C.

§ 1983 and the First and Fourteenth Amendments to the United States Constitution.

Claim 2:        Unconstitutional Deprivation of Liberty and Property Without Due Process – All
                Defendants

4.2    By the above-described acts, all the Defendants caused Plaintiff to be denied

liberty and property without due process of law, violating clearly established rights guaranteed

by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

## V.    INJUNCTION ALLEGATIONS

5.1    Plaintiff has no adequate remedy at law for the damage he has suffered and is

continuing to suffer as a result of the termination of his employment by the City of Mountlake

Terrace without due process and in retaliation for his First Amendment activities.

5.2    Plaintiff has no adequate remedy at law for the damage he has suffered and is

continuing to suffer from the "Brady" determination made and maintained by the Snohomish

County Prosecuting Attorney's office without due process and in retaliation for his First

Amendment-protected beliefs and activities.

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 27

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

## VI.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

6.1    From all Defendants in their individual capacities, special and general compensatory damages in an amount to be proved at trial, with pre-judgment interest on back pay, and lost benefits;

6.2    From Defendants Rider, Smith, Caw, Mitchell, and Roe, punitive damages in amounts to be proved at trial;

6.3    From all Defendants, post-judgment interest from the date of judgment to the date the judgment is paid in full; and any other damages allowed by law, including a "gross-up" to cover adverse tax consequences of recovery of damages and attorney's fees and costs;

6.4    Costs, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988, and as otherwise allowed by law;

6.5    An injunction requiring Defendant Ellis and Defendant Snohomish County to remove the adverse "Brady" letter regarding Sgt. Wender from their official files;

6.6    An injunction requiring Defendant Smith and Defendant Mountlake Terrace to reverse their adverse disciplinary actions and reinstate Sgt. Wender to his previous position; and

6.7    Such other relief as the Court deems just and equitable.

DATED this 25ᵗʰ day of October, 2007.

MacDONALD HOAGUE & BAYLESS

By _Andrea Brenneke_
Andrea Brenneke, WSBA #22027
Timothy K. Ford, WSBA #5986
Joseph R. Shaeffer, WSBA #33273
Attorneys for Plaintiff

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 28

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX:  (206) 343-3961

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2007, I electronically filed the foregoing to the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Michael Charles Bolasina**
  mbolasina@staffordfrey.com,nskretta@staffordfrey.com
- **Robert Leslie Christie**
  bob@christielawgroup.com,jason@christielawgroup.com,tom@christielawgroup.com,robertchristie@mac.com,maureen@christielawgroup.com
- **Charlotte F Comer**
  ccomer@co.snohomish.wa.us,gbennett@co.snohomish.wa.us
- **Michael C Held**
  mheld@co.snohomish.wa.us,pfowler@co.snohomish.wa.us
- **Gregory G. Schrag**
  schragaty@aol.com

By    */s/ Andrea Brenneke*
Andrea Brenneke, WSBA #22027
andreab@mhb.com
Timothy K. Ford, WSBA #5986
timf@mhb.com
Joseph R. Shaeffer, WSBA #33273
josephs@mhb.com 705 Second Avenue, Suite 1500
Seattle, WA 98104-1745
Phone: 206-622-1604
Fax: 206-343-3961
Attorneys for Plaintiff

FIRST AMENDED COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF (CV 07-0197 Z)- 29

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961